# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

BERNARD PRICE                                                                               PLAINTIFF

v.                                                                                 CIVIL ACTION NO. 2:08cv262-P-A

TUNICA COUNTY, MISSISSIPPI,                                    DEFENDANT

## FINAL JUDGMENT

These matters come before the court upon the defendant's motions *in limine* [docket numbers 69, 72, and 73] and the plaintiff's motion *in limine* [docket number 77]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

Defendant Tunica County filed its first motion *in limine* on April 6, 2011 wherein it seeks to prevent the plaintiff from (1) arguing that Sheriff Hamp was aware of and disregarded any custom or policy of not properly attending to inmate medical needs at the Tunica County Jail; or (2) referring to three *pro se* suits filed in federal court by inmates of the Tunica County Jail in the Northern District of Mississippi complaining of inadequate medical care or to ten inmate grievances made during Sheriff Hamp's tenure since 2004.

The defendant's second motion *in limine* seeks to prevent the plaintiff from arguing that Nurse Pugh, the registered nurse at the county jail, was the final policymaker for purposes of §1983 municipal liability.

All that remains of the plaintiff's case is a federal §1983 claim against Tunica County for violation of the Eighth Amendment's protection against cruel and unusual punishment in the form of seriously inadequate medical care. There are no state law claims, nor are there any claims against

any individual defendants. These were dismissed without prejudice by an Agreed Order of April 8, 2009.

Granting the defendant's first and second motions *in limine* would essentially require dismissal of the plaintiff's case. Though the court denied the defendant's motion for summary judgment on September 2, 2010, the defendant's motion is based heavily on the U.S. Supreme Court's March 29, 2011 decision in *Connick v. Thompson*, 131 S.Ct. 1350 (2011) which was decided seven months after the court denied summary judgment. Accordingly, after the instant motion was fully briefed, the court directed the parties to brief the import of the *Connick* decision upon this case more fully.

In *Connick*, the Supreme Court overturned the Fifth Circuit's upholding of a $14 million verdict against a Louisiana parish prosecutor's office. In that case, Thompson served 18 years for a murder conviction and just one month before his scheduled execution, his investigator discovered undisclosed exculpatory evidence which the reviewing court ultimately used to vacate Thompson's sentence. Thompson then sued the parish prosecutor's office. The sole claim to go to trial was his §1983 claim that the prosecutor's office violated *Brady* by failing to disclose exculpatory evidence. The jury found for Thompson. A Fifth Circuit Court of Appeals panel affirmed the $14 million verdict and on a hearing *en banc*, the affirmation stood because the *en banc* court was evenly divided. The Supreme Court overturned the verdict, concluding that Thompson did not adequately establish a "single incident" §1983 failure to train claim (*i.e.*, the unconstitutional consequences of a failure to train would be so obvious that proof of a pattern of previous violations would be unnecessary for §1983 liability pursuant to *Canton v. Harris*, 489 U.S. 378 (1989)) because prosecutors already receive adequate training on avoiding *Brady* violations by the general training

2

required to obtain a license to practice law.

In *Connick* the Court observed that Thompson discovered that during the ten years prior to his trial, Louisiana courts had overturned four convictions because of *Brady* violations in the same prosecutor's office. In this regard, the Court concluded that "[b]ecause those incidents are not substantially similar to the violation at issue here, they could not have put [the prosecutor] on notice that specific training was necessary to avoid this constitutional violation." *Connick*, 131 S.Ct. at 1360.

Tunica County argues that the *Connick* decision stands for the proposition that when a pattern of similar violations is required to support a §1983 municipal liability claim, the pattern must be shown to be "substantially" similar violations, as opposed to merely "similar" violations. Tunica County also argues that substantially similar "violations" explicitly found by a court or other authoritative body are required as opposed to mere "allegations." More specifically, Tunica County argues that in this case the three *pro se* inmate lawsuits were all dismissed in favor of Tunica County and the ten inmate grievances were neither substantially similar, nor were they found by Internal Affairs or anyone else in Tunica County to be actual violations or otherwise substantiated. Tunica County thus concludes that since all the plaintiff has are mere dissimilar allegations and no actual findings of substantial failures of providing medical care, the plaintiff's §1983 claims fail as a matter of law because of the inability to show that the final policymaker, *i.e.*, Sheriff Hamp, had knowledge or constructive knowledge of a policy or custom of unconstitutionally inadequate medical care at the Tunica County Jail.

The plaintiff argues that *Connick* only involved a failure to train claim. Since he has explicitly disavowed a §1983 claim based on failure to train in his response brief, the plaintiff

maintains that *Connick* is inapplicable to this case. Instead, the plaintiff argues that (1) the three lawsuits and ten grievances adequately demonstrate a pattern of violations creating an unconstitutional custom; or (2) the jail's registered nurse, Nurse Pugh, was the person who allegedly denied the plaintiff medical care and this single act can give rise to municipal liability because, the plaintiff argues, she was a policymaker pursuant to Miss. Code Ann. § 47-1-15(2).

The positions taken by the plaintiff in his May 2011 responses to the defendant's motions *in limine* have evolved rather late in the game – some nine months after denial of summary judgment and over a year after expiration of the motions deadline on March 12, 2010. It is reasonable to assume that the defendant's citation to *Connick* in the instant motion brought about this evolution. Nevertheless, given the late assertion of the plaintiff's current theories, the court finds it proper to treat the defendant's motions *in limine* regarding these new theories as motions for either summary judgment or judgment on the pleadings.

Keeping in mind that the plaintiff conceded any theories based on a failure to train, there appear to be two distinct §1983 theories at issue: (1) municipal liability based on custom through Sheriff Hamp in his official capacity, or Nurse Pugh; and (2) municipal liability based upon a single incident by Nurse Pugh.

Ordinarily, municipal liability under §1983 must be predicated upon an official policy that violated a clearly established constitutional right. However, in some circumstances, liability can be based upon an unofficial custom which has become a *de facto* official policy. In this regard, the Fifth Circuit in *Webster v. Houston*, the Fifth Circuit wrote that official policy can consist of "[a] **persistent, widespread practice** of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom

4

that fairly represents municipal policy." 735 F.2d 838, 841 (5th Cir. 1984) (emphasis added).

The court concludes that three dismissed *pro se* inmate lawsuits and ten unsubstantiated inmate grievances over a period of approximately four years (from the first election of Sheriff Hamp in 2004 to the filing of the complaint on December 18, 2008) is insufficient to create a genuine issue of material fact of whether there was a "persistent, widespread practice" or custom of unconstitutionally inadequate medical care in the Tunica County Jail. First, none of these prior incidents were ever substantiated, rendering them mere allegations. Second, the Supreme Court ruled in *Connick* that four prior incidents of failure to provide exculpatory evidence under *Brady* – all four of which occurred in the same county prosecutor's office and were all substantiated in court proceedings resulting in reversals of the convictions – were insufficient to establish an unconstitutional custom. *Connick*, 131 S.Ct. at 1360. Third, the Fifth Circuit in *Pineda v. City of Houston* concluded that 11 prior reports of warrantless entries into houses by the Houston Police Department were insufficient to establish an unconstitutional custom or pattern given that Houston, Texas was a large city. 291 F.3d 325, 329 (5th Cir. 2002). Though Tunica County, Mississippi is not comparable in size to Houston, Texas, the population of the Tunica County Jail over a four year period is large enough to render three dismissed inmate lawsuits and ten inmate grievances of inadequate medical care similarly insufficient to establish a unconstitutional custom or "persistent, widespread practice."

Even if it were found that he had sufficient evidence to create a jury issue on an unconstitutional custom, the plaintiff must also prove that "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster*, 735 F.2d at 841. As explained below,

the court concludes that the plaintiff has not established a genuine issue of material fact warranting a trial on the issue of whether actual or constructive knowledge can be imputed to anyone with policy-making authority at the Tunica County Jail.

The plaintiff has offered no evidence that Sheriff Hamp had actual or constructive knowledge of the custom. Instead, the plaintiff argues that Miss. Code Ann. §47-1-57 delegated policy-making authority for making medical decisions in a county jail to a registered nurse, in this case Nurse Pugh. The Mississippi Code states in pertinent part:

> (1) When any person confined in jail shall be in need of medical or surgical aid, the **sheriff** shall immediately examine the condition of such prisoner and, if he is of the opinion that the prisoner needs such aid, he shall call in a nurse or physician to attend him.
> ***
> (2) The board of supervisors of any county may authorize the **sheriff** to establish a program under which prisoners expressing the need for non-emergency medical attention will have access to a registered nurse who will evaluate their condition and determine the necessity for treatment by a physician.
> ***

Miss. Code Ann. §47-157 (emphasis added).

The plaintiff cites no authority for the proposition that §47-157 delegates official policy-making authority to a registered nurse. The plain language of the statute in subsection (1) states that the sheriff is responsible for medical needs and subsection (2) only allows the board of supervisors to allow the sheriff to, in turn, allow a registered nurse to evaluate medical conditions. Regardless of whatever decision is made by the nurse in the county jail, the sheriff is still the final policy-making authority. Moreover, the Fifth Circuit has made clear that "sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.2d 221, 227 (5th Cir. 2008).

Finally, the Fifth Circuit in *Webster* stated: "Actions of officers or employees of a municipality do not render the municipality liable under §1983 unless they execute official policy as above defined." 735 F.2d at 841. The plaintiff has failed to show that Nurse Pugh executed the official policy of Tunica County despite her being designated to assist in medical evaluations per §47-1-57.

The plaintiff argues in the alternative that Tunica County can be liable under §1983 for the single act of Nurse Pugh's alleged refusal to provide the plaintiff with the medical care he sought, citing *Woodward v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) for the proposition that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker.

As discussed above, pursuant to §47-1-57 and Fifth Circuit precedent, Sheriff Hamp was the final policymaker for all activities in the Tunica County Jail, not Nurse Pugh. Nevertheless, even if Nurse Pugh were considered a final policymaker, the plaintiff has not alleged a constitutional violation of the magnitude contemplated in *City of Canton, Ohio v. Harris*, 48 U.S. 278 (1989) where the Supreme Court used an example of sending out neophyte police officers with firearms with no training in their use.

For the reasons discussed above, the court concludes that the defendant's first and second motions *in limine* should be granted. Given the circumstances in this case, this ruling requires dismissal of the plaintiff's suit with prejudice. The defendant's third motion *in limine* and the plaintiff's motion *in limine* should be dismissed as moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) The defendant's first and second motions *in limine* [69,72] are **GRANTED**; therefore,

(2) The plaintiff's remaining §1983 claims are **DISMISSED WITH PREJUDICE**;

(3) The defendant's third motion *in limine* [73] is **DENIED AS MOOT**;

(4) The plaintiff's motion *in limine* [77] is **DENIED AS MOOT**; and

(5) This case is **CLOSED** with the parties to bear their own costs.

**SO ORDERED** this the 4th day of August, A.D., 2011.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE